UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP W. BERRYMAN,

      Plaintiff,

                                              CASE NO. 1:10-CV-12169
v.                                       JUDGE THOMAS . LUDINGTON
                                              MAGISTRATE JUDGE PAUL KOMIVES

BARBARA SAMPSON, et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION ON: (1) PAROLE BOARD DEFENDANTS'
MOTION TO DISMISS (docket #36); (2) MDOC DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (docket #38); and (3) DEFENDANT BERRIOS'S MOTION TO
DISMISS (docket #61)**

I.      RECOMMENDATION: The Court should grant defendants' motions to dismiss, dismiss plaintiff's claims against the moving defendants for failure to state a claim upon which relief may be granted, and *sua sponte* dismiss plaintiff's claims against defendant Ford.

II.     REPORT:

A.     *Procedural Background*

This *pro se* civil rights action was brought pursuant to 42 U.S.C. § 1983 by a number of prisoners in the custody of the Michigan Department of Corrections. After each of the other plaintiff's withdrew from the action, Philip Berryman, the sole remaining plaintiff, filed an amended complaint. As defendants, petitioner names: Barbara Sampson, Chair of the Michigan Parole Board and Board Members James Atterberry, Miguel Berrios, Charles Brown, Paul Condino, Jodie DeAngelo, Stephen DeBoer, David Fountain, Lisa Gettys, Artina Tensley Hardman, John Sullivan, Anthony E.O. King, Laurin' Thomas, Sonia Warchock, and David Kleinhardt (collectively "Parole Board defendants"); Michigan Department of Corrections (MDOC) employees at the G. Robert

Cotton Correctional Facility including Assistant Deputy Warden Larry Ford, Classification Director Catherine DeForest, Resident Unit Manager Quincie Cooper, Assistant Librarian Jacqueline Cooke, and Librarian Hatutu Elam; and Thomas A. Kulick, who plaintiff identifies as an employee of the MDOC but who defendants identify as a Michigan Assistant Attorney General. Plaintiff alleges that defendants failed to afford him a fair commutation hearing, relied on or provided false information at the hearing, and denied him a commutation in retaliation for his having filed lawsuits and grievances. He alleges that, despite medical testimony that he is unlikely to live for more than a year, the Board recommended that the Governor not commute his sentence based on his litigation history. He also alleges that other similarly situated prisoners who had not filed lawsuits while incarcerated were recommended for commutation. Plaintiff's complaint seeks monetary damages, a declaratory judgment, and injunctive relief. On December 20, 2010, the Court entered an Order dismissing plaintiff's claims against defendant Kulick, as well as his claims for monetary damages against the Parole Board defendants.

This matter is before the Court on three motions to dismiss or for summary judgment filed by defendants.[1] First, on March 11, 2011, the Parole Board defendants (except for defendant Berrios, who had not then been served), filed a motion to dismiss pursuant to Rule 12(b)(6). The Parole Board defendants argue that they are immune under the Eleventh Amendment for plaintiff's claims against them in their official capacities, that plaintiff's complaint fails to state a claim upon which relief may be granted, and that they are entitled to qualified immunity. Plaintiff filed a response to this motion on March 25, 2011. Second, on March 17, 2011, the MDOC defendants who had been served (Cook, DeForest, Elum, and Cooper), filed a motion for summary judgment pursuant to Rule 56(a). These

---

[1] Several additional motions filed by the parties are addressed in a separate Order entered on this date.

defendants likewise contend that they are entitled to absolute and qualified immunity, and that plaintiff's claims fail on the merits. Plaintiff filed a response to this motion on March 31, 2011. Plaintiff also filed a supplemental brief with respect to each of these motions on April 22, 2011. Finally, on June 23, 2011, defendant Berrios filed a motion to dismiss, incorporating by reference the Parole Board defendants' motion to dismiss. Plaintiff filed responses to this motion on June 30 and July 18, 2011. All defendants filed a reply brief on August 8, 2011. For the reasons that follow, the Court should grant defendants' motions and dismiss plaintiff's claims. The Court should also *sua sponte* dismiss plaintiff's claims against defendant Ford.

B.   *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action

3

> will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). Although the MDOC defendants have submitted a motion for summary judgment and attached exhibits, including their affidavits, thereto, I have treated

the motion solely as one to dismiss and I have not considered these additional materials. Rather, as the discussion below makes clear, I have assessed only whether the complaint itself states a claim for relief.

C.     *Discussion*

Because plaintiff challenges conduct which, he contends, resulted in a denial of commutation of his sentence, and because the power of commutation is vested exclusively in the Governor, the Court should conclude that plaintiff's complaint fails to state a claim upon which relief may be granted.

     1.     *Commutation Under Michigan Law and the U.S. Constitution*

Although the parties at times discuss the matters at issue as involving a denial of parole, it is clear that parole was not implicated here. As petitioner alleges in his complaint, he was sentenced to life imprisonment in 1970 following his conviction for first degree murder. Under Michigan law, the penalty for first degree murder is a mandatory term of life imprisonment without possibility of parole. *See* MICH. COMP. LAWS §§ 750.316(1); 769.234(6) ("A prisoner under sentence for life other than a prisoner sentenced for life for murder in the first degree . . . is subject to the jurisdiction of the parole board and may be released by the parole board subject to the following conditions . . . ."). Thus, for a prisoner sentenced to life imprisonment for first degree murder, release may be had only through pardon or commutation of his sentence. The Michigan constitution vests the power to commute a sentence solely in the Governor. *See* MICH. CONST. art. V, § 14 ("The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law."). As the Michigan Supreme Court has explained, § 14 vests the commutation power exclusively in the governor, and any law restricting this power is unconstitutional

and void. *See Kent County Prosecutor v. Kent County Sheriff*, 425 Mich. 718, 723, 391 N.W.2d 341, 342 (1986) (plurality); *People v. Freleigh*, 334 Mich. 306, 310, 54 N.W.2d 599, 601 (1952).

Although the commutation power is vested exclusively in the Governor, the Michigan legislature has established a role for the Parole Board to assist the Governor in exercising this power. Specifically, at least one member of the Board must interview a person subject to a sentence of life imprisonment without parole every ten years. Upon its own initiation or application by any person for commutation, the Board must take several steps, including providing notice to various parties, conducting a hearing, and making a formal recommendation to the governor. *See* MICH. COMP. LAWS § 791.244. These actions remain, however, "[s]ubject to the constitutional authority of the governor to grant reprieves, commutations, and pardons," MICH. COMP. LAWS § 791.244(1).

As the Supreme Court has repeatedly explained, the executive's power to grant pardon or commutation is a matter of sovereign grace, and holds a unique position in the Anglo-American legal tradition, dating back to the Eighth Century. *See Herrera v. Collins*, 506 U.S. 390, 412 (1993). This sovereign grace is exclusively the prerogative of the executive, and not a fit subject for judicial intervention. As Chief Justice Marshall explained:

> A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed. It is the private, though official act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court. It is a constituent part of the judicial system, that the judge sees only with judicial eyes, and knows nothing respecting any particular case, of which he is not informed judicially. A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown and cannot be acted on. The looseness which would be introduced into judicial proceedings, would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages.

*United States v. Wilson*, 32 U.S. 150, 160-61, 7 Pet. 150, 160-61 (1833). The Court has repeatedly

reaffirmed this understanding of the executive's power to grant clemency through pardon and commutation. *See, e.g.*, *Ex parte Wells*, 59 U.S. 307, 311, 18 How. 307, 311 (1856); *Herrera*, 506 U.S. at 411-13. More recently, the Court has explained that "'pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review,'" and that "a petition for commutation, like an appeal for clemency, 'is simply a unilateral hope.'" *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 (1998) (plurality) (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). Because of this, where as here the state grants exclusive power to the executive to grant commutation or pardon, the executive "deny the requested relief for any constitutionally permissible reason or for no reason at all." *Dumschat*, 452 U.S. at 467 (Brennan, J. concurring). With this understanding of executive clemency and the judiciary's limited role in mind, it is clear that plaintiff's claims fail as a matter of law.

    2.    *Analysis*

Plaintiff's complaint, broadly construed, alleges three constitutional violations on the part of defendants.

*a. Due Process/False Information*

First, plaintiff contends that some MDOC defendants presented false evidence to the Board, or that some Board defendants relied on false information in making the Board's recommendation to the governor. However, because there is no constitutional right to clemency, pardon, or commutation, at most only minimal due process protections apply to commutation procedures. *See Workman v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001) (citing *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring) (explaining that "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the

State arbitrarily denied a prisoner any access to its clemency process.").[2] Plaintiff's allegations that defendants fabricated or presented false evidence at his commutation hearing do not suggest that the defendants failed to afford him the minimal due process protections required by the Constitution, but instead attack the substantive sufficiency of the Board's recommendation. As such, plaintiff's allegations that defendants presented or relied on false evidence do not state a claim for relief under § 1983. *See Workman v. Summers*, 111 Fed. Appx. 369, 371 (6th Cir. 2004); *Perry v. Morgan*, 122 F.3d 18, 20 (8th Cir. 1997); *Chambers v. Granholm*, No. 1:11-cv-42, 2011 WL 447016, at *3 (W.D. Mich. Feb. 4, 2011).

### b. Retaliation

Plaintiff's complaint also alleges that the Board recommended that he be denied commutation in retaliation for his having previously filed lawsuits. Plaintiff's allegations fail to state a claim with respect for retaliation. In order to succeed on a retaliation claim, plaintiff must establish three

---

[2]It is questionable whether plaintiff enjoyed any due process protection in connection with the commutation proceedings. In *Woodard*, which involved a petition for clemency by an Ohio prisoner under a death sentence, Justice O'Connor, writing for herself and three other Justices, read Chief Justice Rehnquist's opinion (for himself and three other Justices) as suggesting that "because clemency is committed to the discretion of the executive, the Due Process Clause provides no constitutional safeguards." *Woodard*, 523 U.S. at 288 (O'Connor, J., concurring). Justice O'Connor disagreed with this assertion, but in doing so noted that Chief Justice Rehnquist's opinion relied on cases involving clemency for prisoners not sentenced to death. *See id.* Justice O'Connor explained:

> In those cases, the Court found that an inmate seeking commutation of a life sentence or discretionary parole had no protected liberty interest in release from lawful confinement. When a person has been fairly convicted and sentenced, his *liberty* interest, in being free from such confinement, has been extinguished. But it is incorrect, as Justice STEVENS' dissent notes, to say that a prisoner has been deprived of all interest in his *life* before his execution.

*Id.* at 288-89 (emphasis added). Thus, even under Justice O'Connor's view, the Due Process Clause has no role to play in pardon and commutation decisions affecting prisoners not subject to sentences of death. *See Chambers v. Granholm*, No. 1:11-cv-42, 2011 WL 447016, at *3 (W.D. Mich. Feb. 4, 2011) (holding that plaintiff's clam that his commutation recommendation was based on false information did not state a claim under § 1983 and explaining, in reliance on Justice O'Connor's language above, that "[w]hile judicial intervention may be appropriate in extraordinary death penalty cases to ensure that the procedure is not entirely arbitrary, non-death cases do not implicate any federal interest.").

elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.). Here, plaintiff's complaint fails to allege facts demonstrating a causal connection between his protected litigation activity and the Board's recommendation that commutation be denied. First with respect to the Parole Board defendants, plaintiff's complaint falls to allege that any of the Parole Board members were motivated by his prior litigation activity in making their recommendation to the Governor. Plaintiff's complaint alleges only that defendant Kulick brought up the subject of his prior litigation history. He does not allege that any Parole Board member discussed the matter. *See* Amended Compl., ¶¶ 42-43. With respect to the Parole Board members, plaintiff alleges only in conclusory fashion that the Board members "relied on [this] false information" and "conspired together and with each other to retaliate against [him] for having exercised his constitutional right regarding access to the Courts." *See id.*, ¶¶ 52-62. Despite repeating this allegation in numerous paragraphs of his amended complaint, plaintiff presents no additional facts from which it can plausibly be inferred that the Board members in fact retaliated against him. *See Bowens v. Blagojevich*, No. 06 C 4915, 2008 WL 4378823, at *5 (N.D. Ill. Mar. 11, 2008), *rev'd in part on other grounds*, 561 F.3d 671 (7th Cir. 2009); *Taylor v. Nix*, 471 F. Supp. 2d 1313, 1321 (N.D. Ga. 2007) (mere fact that clemency file improperly contained information about plaintiff's lawsuits insufficient to allege Board retaliated against plaintiff). As the Sixth Circuit has explained, "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008)

(Rosen J., adopting Report of Komives, M.J.).

With respect to the MDOC defendants, plaintiff's complaint does allege facts that these defendants indicated that they would make sure that the Board rejected his commutation application because of his prior litigation activity. The MDOC defendants, however, had no role in the Board's decision to recommend that the Governor grant or deny commutation. "Despite [plaintiff's] contention that [the MDOC defendants] instigated [the Board's recommendation], these [defendants] did not have the ability to [make any recommendation to the Governor]. For this reason, [plaintiff] simply does not set forth a valid First Amendment retaliation claim against [the MDOC defendants]." *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *see also*, *Poppy v. City of Willoughby Hills*, 96 Fed. Appx. 292, 294-95 (6th Cir. 2004) (mayor of town could not be liable for retaliating against plaintiff by, among other things, "lobbying the City Council to fire" her, because only the Council had the power to effect the termination); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) ("Winkler's comments do not demonstrate a causal connection between [plaintiff's] filing of grievances and the decision to transfer him because it is uncontroverted that she was not the decisionmaker in this case. Consequently, her statements cannot be taken as evidence of a retaliatory motive."). Thus, plaintiff's retaliation claim fails as a matter of law.

### c. Equal Protection

Finally, plaintiff's allegations fail to state a claim under the Equal Protection Clause. To establish an equal protection claim, plaintiff must show that he was denied commutation on the basis of his membership in a suspect classification such as race, religion, or national origin, or that he was similarly situated to other prisoners who were granted commutation. *See Hodges v. Huckabee*, 40 Fed. Appx. 336, 337 (8th Cir. 2002). Plaintiff does not allege that the commutation decision was based on a suspect classification. Nor can plaintiff show that he is similarly situated to other inmates

for purposes of the commutation decision. Although plaintiff's complaint lists a number of inmates with whom he contends he is similarly situated, for the purpose of commutation "plaintiff is not situated similarly with the other inmates [in the custody of the MDOC]. Each inmate brings a different set of circumstances, including his history, his crimes, and his rehabilitative progress while in prison, to the [commutation] hearing. [Commutation] decisions, by their very nature, require the Board . . . to look at the individual circumstances of the prisoner and his crimes." *Houtz v. Deland*, 718 F. Supp. 1497, 1501 (D. Utah 1989). Because plaintiff cannot show that he is similarly situated to any other prisoner for purposes of commutation as a matter of law, and because he does not allege that he was treated differently based on a suspect classification, his equal protection claim fails to state a claim for relief.

### d. Fair and Just Treatment

In his supplemental brief, plaintiff also contends that defendants' conduct violated the Michigan constitution's Fair and Just Treatment Clause, which provides that "[t]he right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." MICH. CONST. art. 1, § 17. This claim fails for two reasons.

First, plaintiff's amended complaint does not plead any claim even arguably arising under the Michigan constitution. The complaint raises only federal constitutional claims under § 1983. A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion to dismiss. *See Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). Second, the Michigan constitution does not provide a basis for a civil damages remedy. Section 1983 provides a civil damages remedy against a person who, acting under color of state law, deprives another of "any rights, privileges, or immunities secured

11

by the Constitution and laws[.]" 42 U.S.C. § 1983. By its terms, "[s]ection 1983 is a remedy for violations of certain federal rights. Violations of state law (including a state constitution), however, are not cognizable under Section 1983." *Alston v. Read*, 678 F. Supp.2d 1061, 1074 (D. Hawai'i 2010) (citing *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998)); *see also*, *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *Rector v. City and County of Denver*, 348 F.3d 935, 947 (10th Cir.2003).

To the extent plaintiff is attempting to assert a state law claim under art. 1, § 17, the Court should decline to exercise supplemental jurisdiction over that claim. Congress has provided for limited, supplemental jurisdiction over state law claims that are related to federal claims over which a court has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a).

However, Congress has also provided that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, fairness to litigants, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). But, when "federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wright v. Associated Ins. Cos., Inc.*, 29

F.3d 1244, 1251 (7th Cir. 1994); *see also, Gibbs*, 383 U.S. at 726 ("if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1307 (9th Cir. 1992); *Morse v. University of Vermont*, 973 F.2d 122, 127-28 (2d Cir. 1992); *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214 (W.D.N.Y. 1994); *Heller v. CACL Federal Credit Union*, 775 F. Supp. 839, 843 (E.D. Pa. 1991).

Thus, "federal courts, absent exceptional circumstances, should abstain from exercising [supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986). Accordingly, federal courts routinely decline to exercise supplemental jurisdiction over state law claims where the plaintiffs' federal civil rights claims are dismissed. *E.g., Martinez v. Colon*, 54 F.3d 980, 990-91 (1st Cir. 1995); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992); *Wynn v. Morgan*, 861 F. Supp. 622, 637 (E.D. Tenn. 1994); *Stera v. Hunt Real Estate Corp.*, 859 F. Supp. 661, 668 (W.D.N.Y 1994); *Mark v. Borough of Hatboro*, 856 F. Supp. 966, 976-77 (E.D. Pa. 1994), *aff'd*, 51 F.3d 1137 (3d Cir. 1995); *Wexley v. Michigan State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993), *aff'd*, 25 F.3d 1052 (6th Cir. 1994); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413-14 (D. Del. 1993); *Lahaza v. Azeff*, 790 F. Supp. 88, 93-94 (E.D. Pa. 1992); *Procopio v. Johnson*, 785 F. Supp. 1317, 1320 (N.D. Ill. 1992), *aff'd*, 994 F.2d 325 (7th Cir. 1993). Here, as explained above, plaintiff's federal claims are all subject to dismissal, and thus the Court should decline to exercise supplemental jurisdiction over plaintiff's purported state law claim.

This conclusion is particularly compelling here. Under § 1367, a court may also decline to exercise supplemental jurisdiction over a state claim where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). As the Second Circuit has explained:

> Where a pendent state claim turns on novel or unresolved questions of state law,

13

> especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts. This is particularly true if the federal claim on which the state claim hangs has been dismissed.

*Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (internal quotation omitted). Here, not much has changed in the 11 years since the Michigan Court of Appeals observed that "[t]here are very few published cases that cite the fair and just treatment clause for any purpose, and none of these cases explain its meaning, larger purpose, or relationship to the other rights enumerated in that section of the constitution in any detail." *Jo-Dan, Ltd. v. Detroit Bd. of Educ.*, No. 201406, 2000 WL 33416896, *7 (Mich. Ct. App. July 14, 2000). Further, there are no cases, published or unpublished, which discuss how the Fair and Just Treatment Clause interacts with the clause of the Michigan constitution granting the Governor exclusive power with respect to pardons and commutations. Because this is a sensitive area of law impacting the state's administration of its government with respect to which the Michigan courts have not spoken, and because the federal claims are all subject to dismissal, the Court should decline to exercise supplemental jurisdiction over any Michigan constitutional claim which plaintiff may be asserting.

### e. Defendant Ford

Finally, although defendant Ford has not moved to dismiss the complaint because he has not yet been served, the Court should *sua sponte* dismiss plaintiff's claims against defendant Ford. The Prison Litigation Reform Act (PLRA) provides that a court may *sua sponte* "dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1). Further,

"[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993); *see also*, *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008). A court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well where "it is clear that the same ruling would inevitably apply to each of the defendants." *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F. Supp. 1180, 1189 n.11 (W.D. Mo. 1983). Here, the same analysis applies to plaintiff's claims against defendant Ford as applies to his claims against the other defendants. Accordingly, the Court should *sua sponte* dismiss plaintiff's claims against defendant Ford.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff's complaint fails to state a claim for relief against defendants for denial of due process or equal protection, or for retaliation. Accordingly, the Court should grant defendants' motions to dismiss, dismiss plaintiff's claims against the moving defendants, and *sua sponte* dismiss plaintiff's claims against defendant Ford.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931

...

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/8/11

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on September 8,  2011.
>
> s/Eddrey Butts
> Case Manager